11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Gholamreza Gharbi

Appellant

Vs.                   Nos.
11-01-00020-CR & 11-01-00021-CR  B Appeals from Dallas County

State of Texas

Appellee

 

Two
different juries convicted Gholamreza (Ray) Gharbi of two different violations
of the same protective order.  At the
first trial,[1]
appellant elected to have the judge assess the punishment; punishment was
assessed at confinement for 1 year and a fine of $300, but the imposition of
sentence was suspended for 24 months of community supervision.  At the second trial,[2]
appellant elected to have the jury assess the punishment; punishment was
assessed at confinement for 180 days and a fine of $2,500.  The jury refused appellant=s application for community supervision.  Appellant appeals both convictions.  We affirm.

                                                          The
First Trial and Appeal

The
information charged that on or about May 17, 2000, appellant did unlawfully go
near the residence of AEVELYN GHARBI,@ a protected individual, at A1242 Dumont Drive, Dallas, Dallas County, Texas,@ in violation of an order issued by the 292nd
District Court which ordered appellant not to go Awithin 500 feet of the residence of IVANA GHARBI, to-wit: 1242
Dumont Drive, Dallas, Texas 75086.@  (Emphasis added) The record
showed that appellant and Evelyn were the parents of Ivana, that Evelyn and
Ivana both resided at 1242 Dumont Drive, that the address was in the City of
Richardson, and that the zip code was wrong.

 








                                                        The
Second Trial and Appeal

The
information charged that on or about May 5, 2000, appellant did unlawfully go
near the residence of AEVELYN GHARBI, a protected individual, at 1242
Dumont Drive, Richardson, Dallas County, Texas,@ in violation of an order issued by the 292nd District Court which
ordered appellant not to go Awithin 500 feet of the residence of IVANA GHARBI, to-wit: 1242
Dumont Drive, Richardson, Dallas County, Texas 75086.@ 
(Emphasis added) This record also showed that appellant and Evelyn were
the parents of Ivana, that Evelyn and Ivana both resided at 1242 Dumont Drive,
and that the zip code was wrong.

                                                                   Points
of Error

The first
two points of error in the second appeal are identical to the only two points
of error in the first appeal.  They read
in full as shown:

1.  There is insufficient evidence to sustain
the conviction of Appellant for the offense charged in the information.

 

2.  There is a fatal variance between the
allegation in the information as to the protected individual and the proof at
trial of who was protected.

 

There is a
third point of error in the second appeal. 
In that point, appellant argues that the admission into evidence before
the jury of proof of the prior conviction Awas a due process violation.@

                                                      Relevant
Testimony - First Trial

Before the
first witness testified, there was a discussion between the trial court and the
attorneys about the fact that there were two protective orders, one for the
minor child and one for the mother.  The
trial court instructed the prosecutor that she was Agoing to have to pick which one...to go on.@[3]








The
complainant, Evelyn Gharbi, was the first witness.  She testified that she was married to appellant; that they were
the parents of a little girl named AIvana@; that she and appellant were involved in
divorce proceedings when she got protective orders to protect herself and her
child; and that appellant violated those protective orders on May 17, 2000,
when she and Ivana lived at 1242 Dumont Drive, Richardson, Dallas County,
Texas.  The complainant testified that
appellant pulled his car into the driveway, parked the car, and walked directly
toward her.  The complainant said that
appellant called her Abitch@ and Awhore@ and that he was looking at her like he was
ready to Apunch [her] out.@  The
complainant said that appellant then seemed to realize that he could not do
what he had intended to do because there was a witness and that appellant
turned around, ran to his car, and Atook off.@  The complainant testified that she called A911" and that two police officers Aarrived immediately.@  One
of them interviewed her, and the other interviewed the witness.  

Two police
officers testified about their investigation of the incident on May 17.  Appellant took the position that the complainant
did not tell the truth to the officers or to the jury.  Officer Jorge Hernandez of the Richardson
Police Department testified that, when he saw the complainant that night, she Aseemed to be shaky@ and that Ashe was definitely in fear of something.@  Officer Hernandez said that he
and Officer James W. Holley tried to Acalm her down@ and Afigure out what was going on.@ 
Detective Phillip Casavant of the Richardson Police Department testified
that he did the follow-up investigation. 
He made sure that there was a protective order, and he took a signed
statement from the complainant.  Then he
reviewed the report from the two officers, took a statement from the witness
who was there when the incident occurred, and obtained an arrest warrant for
appellant.  The only other witness at
the guilt/innocence phase of the trial was an alibi witness for appellant.  The complainant and appellant were the only
witnesses at the punishment phase of trial. 
Appellant testified that he did not violate the protective order and
that he was not at the complainant=s house on May 17.

                                                    Relevant
Testimony - Second Trial








The
complainant, Evelyn Gharbi, was the first witness.  She testified that she was married to appellant and that they had
been married Asix and a half years.@  She
also testified that they had a Afour year old by the name of Ivana.@  The complainant identified
appellant and then testified that they had separated on February 10, 2000; that
she applied for protective orders for herself and for their child[4];
that there were several hearings; and that the protective orders were granted
on April 13.  The complainant then
testified about the incident on May 5, 2000. 
The complainant had taken Ivana to visit the complainant=s older child.  They returned to their home at 1242 Dumont Drive in Richardson at
9:45 p.m., and Ivana was in the backseat of the car asleep in her car
seat.  The complainant said that
appellant pulled his car into the driveway next to her car, that he called her
names (Abitch@ and Awhore@), and that it made her feel like he was Aabusing@ her again. 
The complainant said that she Agot very upset,@ that she grabbed Ivana, and that she Aran into the house.@  The complainant said that
appellant Apulled away@ because he knew that she was going to Acall 911."  The complainant
also testified that her zip code was A75080.@  The
information and affidavit refer to the zip code as A75086.@   The complainant said that the
police officer Aarrived pretty quick@ and that she told him what had happened.

The second
witness was Officer James W. Holley of the Richardson Police Department.  He testified that he went to 1242 Dumont
Drive on May 5 in response to a call from dispatch, that he arrived within five
or ten minutes from the time he received the call, and that the complainant was
Aextremely upset@ and Acrying.@  Officer Holley testified that
the complainant Awas shaking a little bit@ and that she seemed to be Aextremely frightened and scared.@  The
third witness, Detective Phillip Casavant of the Richardson Police Department,
testified that he did the follow-up investigation on the May 5 offense.  He took the complainant=s sworn statement and obtained the arrest
warrant.  Detective Casavant testified
that he knew that the zip code for that part of the City of Richardson was A75080" even though the number was hard
to read on the protective order. 
Detective Casavant also testified that appellant=s driver=s license showed the same street address which was shown on the
protective order and that the zip code shown on appellant=s driver=s license was A75080.@ 








Appellant
was the last witness to testify during the guilt/innocence phase of trial.  He testified that he Avacated the premises@ on February 10, and he swore that he did not
go there on May 5.  Appellant also
testified that the complainant had threatened him a Anumber of times,@ saying that she was going to have him
deported if he did not do what she wanted. 
On cross-examination, he agreed that he knew the exact address of the
house where his wife and daughter were living and that he was Afully aware that address where [his] wife and
daughter were living was off limits@ to him.  Appellant also
testified that the complainant was Aa liar.@ 
Appellant agreed that he was telling the jury that his wife was lying
when she claimed that he Aviolated the protective order.@  

                                        Sufficiency
of Evidence: Claim of AFatal@
Variance

The
evidence in both cases shows that there were two protective orders.  One protective order named appellant=s wife, Evelyn, who is the complainant in
both appeals.  The other protective
order  named their daughter, Ivana.  Both named the home where all three of them
had lived.  

The court
of criminal appeals has discussed the problems involved in variances between
the allegations and proof in two recent cases. 
See Gollihar v. State, 46 S.W.3d 243, 256-58 (Tex.Cr.App.2001), where
the court reaffirmed the Afatal variance@
doctrine and overruled Asurplusage law and its Burrell exception.@[5]         The
court then held that Aonly a
>material= variance will render the evidence insufficient.@  The
court said the question is Awhether the variance...was a >material= one that prejudiced appellant=s substantial rights.@  The
court then restated the question as whether the charging instrument (either an
indictment or an information) informed the defendant of the charge against him Asufficiently to allow him to prepare an
adequate defense at trial@ and was sufficient to keep the defendant from Athe risk of being prosecuted later for the
same crime.@  The
court held that an Aimmaterial
variance is disregarded in a sufficiency of the evidence review.@  See
also Fuller v. State, No. 1283-98, 2002 WL 459834 (Tex.Cr.App. March 27, 2002),
where the court explained its holdings in Gollihar.  Points of Error Nos. 1 and 2 in both appeals
are overruled.

                                          The
ADue Process@ Claim in the Second Appeal

During the
punishment phase of the second case, just before the State offered proof of
appellant=s conviction in the first case, the record
showed the following proceedings:

THE COURT:
Do you want to state your objection?

 








[DEFENSE COUNSEL]: Yes,
Your Honor.  It=s my understanding that the prosecutor is
about ready to offer for identification another case that is pending in this
court.[6]  And, that since any alleged violation from
that particular case is not a final judgment it should not be considered by
this jury or anyone else for any purpose whatsoever.  And, the alleged date of the event preceded...the date of this
event.  [For those] two reasons we would
object to this jury=s
consideration of anything in [the exhibit for the conviction in the first
trial].

 

            After that objection was
overruled, the State introduced the exhibit which showed that appellant was
convicted in a jury trial on November 7 for violation of a protective order and
sentenced to Aone year confinement in the County Jail,@ probated for 24 months.  

The State
made two responses to this point of error. 
First, the State argues that appellant has not preserved this claim for
appellate review because the objection varies from the claim urged by the point
of error.  The State correctly notes
that an objection during trial on one theory will not support a point of error
urging a different theory.  See, e.g.,
Johnson v. State, 803 S.W.2d 272, 292 (Tex.Cr.App.1990).  Second, the State argues that appellant
failed to show that the trial court erred by admitting evidence of appellant=s prior conviction.  We agree.  Appellant cites
no authority in support of this point of error, and TEX. CODE CRIM. PRO. ANN.
art. 37.07, ' 3 (Vernon Supp. 2002) provides in relevant
part:

Regardless of the plea
and whether the punishment be assessed by the judge or the jury, evidence
may be offered by the state and the defendant as to any matter the court deems
relevant to sentencing, including but not limited to the prior criminal
record of the defendant...and...any other evidence of an extraneous crime or
bad act that is shown...regardless of whether he has previously been charged
with or finally convicted of the crime or act. 
(Emphasis added)

 

The
third point of error in the second appeal is overruled.

                                                 This
Court=s Judgment

The judgments of the trial court are affirmed.

 

BOB DICKENSON

SENIOR JUSTICE

May
30, 2002

Do
not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and
Dickenson, S.J.[7]











[1]Cause No. MA00-40172-L in the County Criminal Court No.
10 of Dallas County and No. 11-01-00020-CR on the docket of this court.





[2]Cause No. MA00-40217-L in the County Criminal Court No.
10 of Dallas County and No. 11-01-00021-CR on the docket of this court.





[3]The protective order which was introduced into evidence
is the one which ordered appellant to stay away from the residence of the
child.  The information referred to the
other protective order.





[4]The protective order which was introduced into evidence
is the one which ordered appellant to stay away from the residence of the
child.  The information referred to the
other protective order.





[5]Burrell v. State, 526 S.W.2d 799, 802
(Tex.Cr.App.1975).





[6]See Footnote No. 1.





[7]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.